UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| YANCY CALDWELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:17-cv-447 |
| | ) |
| PESEK, INC. d/b/a | ) |
| EVIL CZECH BREWERY AND | ) |
| PUBLIC HOUSE | ) |
| and GEORGE PESEK | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

1. Plaintiff, Yancy Caldwell ("Caldwell"), by counsel, brings this action against Defendants Pesek Inc. d/b/a Evil Czech Brewery and Public House ("Pesek, Inc.") and George Pesek ("George Pesek")(together "Evil Czech" or "Defendants"), for failure to pay overtime in violation of 29 U.S.C. §207, *et. seq.*, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq*.

## PARTIES

2. Caldwell is an individual who resides in St. Joseph County, Indiana. Evil Czech employed Caldwell within the three-year period preceding the filing of this Complaint. Caldwell was an individual employee within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

3. Pesek, Inc. is an Indiana domestic corporation that owns and operates a brewery and restaurant known as Evil Czech Brewery and Public House, located in Mishawaka, Indiana. Pesek, Inc. acted, directly or indirectly, in the interest of an

employer with respect to Caldwell. Pesek, Inc. is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d).

4. George Pesek is an owner, member, and/or officer of Pesek, Inc. In this capacity, Pesek is involved in the day-to-day business operations of Pesek, Inc. Pesek exercised operational control over Pesek, Inc. and controlled significant business functions of Pesek, Inc. At all relevant times, George Pesek acted and had the responsibility to act on behalf of, and in the interests of Pesek, Inc. in devising, directing, implementing, and supervising the wage and hour practices and policies challenged in this Complaint. George Pesek is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d).

## JURISDICTION

6. This Court has jurisdiction over Defendants because Caldwell has asserted a claim arising under federal law.

## VENUE

7. Venue is proper in this Court pursuant to 28 U.S.C. §1391. Venue is appropriate in the Northern District of Indiana because the wage and hour violations at issue in this case occurred in this District.

## COVERAGE

8. At all times hereinafter mentioned, Caldwell was engaged in interstate commerce as defined by the FLSA, 29 U.S.C. § 207.

9. At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. §203(r).

10. At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. §203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

## **FACTS**

11. Defendants own and operate a restaurant and brewery in Mishawaka, Indiana known as Evil Czech Brewery and Public House.

12. From approximately April 2015 to approximately March 2017, Defendants employed Caldwell.

13. During that period, Defendants employed Caldwell as a dishwasher.

14. Except for some limited hours Caldwell spent bussing tables once a week during approximately the last ten months of Caldwell's employment, Caldwell performed no other work for Defendants other than his work as a dishwasher.

15. Caldwell was never employed by Defendants as a "COOK" or "PREP COOK" and performed no cooking duties in Defendants' kitchen throughout the entire time of his employment with Defendants.

16. Throughout his entire employment, Defendants paid Caldwell an hourly rate.

17. Caldwell was not exempt from the overtime provisions of the FLSA.

18. Caldwell regularly worked in excess of forty (40) hours per week ("overtime hours"), but was not compensated for all overtime hours at the rate required by the FLSA.

19. Defendants knew that Caldwell regularly worked overtime hours.

20. Defendants' conduct in not paying Caldwell overtime compensation at the rate required under the FLSA was willful and in bad faith.

21. Defendants' liability for their deliberate failure to pay Caldwell's earned overtime premium can be proven, among other ways, by Caldwell's paystubs.

22. Defendants utilized an IOI Pay online portal to provide copies of Caldwell's own paystubs to Caldwell during his employment.

23. As of the date of this filing, paystubs for Caldwell are still available to him via this IOI Pay portal.

24. Defendants attempted to hide regular overtime hours worked by Caldwell in multiple ways. Many paystubs currently available to Caldwell via IOI Pay show 80 hours worked in a bi-weekly pay period as "REGULAR" hours worked and any additional hours worked in that same period as "COOK" hours. As an example of this type of paystub, Caldwell provides a copy of a paystub available to him via IOI Pay for the pay period ending 5/10/2015 attached as Exhibit A. As can be seen on Exhibit A, Defendants show Caldwell as having worked 118 total hours in a bi-weekly pay period, yet only show Caldwell being paid his regular rate of $9.00 an hour for all hours worked. It is impossible for Caldwell to have worked 118 hours in a two-week pay period without working hours in excess of forty (40) in a single workweek. Accordingly, Defendants' liability for violating the overtime provisions of the FLSA cannot be refuted.

25. According to the paystubs currently available via IOI Pay, Defendants continued this practice of showing eighty (80) "REGULAR" hours worked by Caldwell in a bi-weekly pay period and any hours in excess of eighty (80) as "COOK" hours until the paystub for pay period ending June 21, 2015.

26. Beginning with the pay period ending July 5, 2015, the paystubs currently available via IOI Pay show some hours worked by Caldwell as "COOK" hours and other hours worked by Caldwell as "PREP COOK" hours. As an example of this, Caldwell attaches his paystub for the pay period ending July 5, 2015 as Exhibit B. This paystub shows 60 "COOK" hours and 39 "PREP COOK" hours in a bi-weekly pay period. This paystub shows Defendants paid Caldwell his regular rate of pay of $10.00 for all 99 hours. It is impossible for Caldwell to have worked 99 hours in a bi-weekly pay period without working in excess of forty (40) hours in a single workweek. Accordingly, Defendants' liability for violating the overtime provisions of the FLSA cannot be refuted.

27. For approximately the last 10 months of Caldwell's employment with Defendants, Caldwell began taking shifts as a busser. According to the paystubs currently available via IOI Pay, Defendants paid Caldwell an hourly rate for his time as a busser of $4.00 an hour plus tips. However, Defendants did not combine Caldwell's hours worked as busser with his hours worked as a dishwasher when totaling his hours worked for the purposes of determining whether Caldwell worked hours in excess of forty (40) in a single workweek. An example of this is attached hereto as Exhibit C. Exhibit C shows Caldwell worked 80 "REGULAR" hours in a biweekly pay period and 3.250 hours as a "BUSSER", yet Defendants paid him his regular rates, $10.50 for

5

"REGULAR" and $4.00 for "BUSSER", for all hours worked. Accordingly, Defendants' liability for violating the overtime provisions of the FLSA cannot be refuted.

28. The paystubs currently available to Caldwell via IOI Pay establish Defendants' violation of the overtime provisions of the FLSA. However, Caldwell asserts that the paystubs currently available to him via IOI Pay have been altered since he received these paystubs in real time while working for Defendants. Specifically, the original paystubs provided to Caldwell during his employment accurately showed the significantly more hours Caldwell worked each pay period and showed "OVERTIME" hours. Despite showing "OVERTIME" hours on his original paystubs, Defendants only ever paid Caldwell his regular rate of pay for all hours worked.

29. Upon information and belief, Defendants have altered Caldwell's paystubs since they were originally provided to him each pay period during his employment.

30. Upon information and belief, Defendants deliberately altered Caldwell's paystubs as part of their effort to deny Caldwell the overtime pay to which his is rightfully entitled.

31. Upon information and belief, Defendants deliberately altered Caldwell's paystubs as part of their effort to conceal Defendants' violation of the FLSA.

**COUNT I: FAILURE TO PAY WAGES IN ACCORDANCE
WITH THE FAIR LABOR STANDARDS ACT**

32. Caldwell hereby incorporates by reference paragraphs 1-31 of his Complaint.

33. During the relevant time period, Defendants have violated the provisions of Section 7 of the FLSA, 29 U.S.C. § 207 by employing Caldwell for workweeks longer than forty hours without compensating Caldwell for his employment in excess of forty

hours per week at a rate not less than one and one-half the regular rate of pay for which he was employed. Defendants have acted willfully, or with reckless disregard, in failing to pay Caldwell in accordance with the law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Yancy Caldwell demands:

a.    An Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid overtime compensation due to Caldwell and for liquidated damages in an amount equal to the unpaid overtime compensation found due to Caldwell;

b.    An Order awarding Caldwell his attorneys' fees and costs of this action; and

c.    An Order granting such other and further relief as may be necessary and appropriate.

/s/ Robert J. Hunt
Robert J. Hunt, (#30686-49)
3091 E. 98th Street, Suite 280
Indianapolis, Indiana 46280
Telephone: (317) 743-0614
Facsimile: (317) 743-0615
E-Mail: rob@indianawagelaw.com

Attorney for Plaintiff